IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


PENNENVIRONMENT and SIERRA CLUB,      )
                    Plaintiffs,       )
                                      )
      vs.                             )      Civil Action No. 12-342
                                      )      Member Cases: 12-527, 13-1395,
PPG INDUSTRIES, INC., BOROUGH OF FORD )      13-1396, 14-229
CITY, and BUFFALO & PITTSBURGH        )      Magistrate Judge Mitchell
RAILROAD, INC.,                       )
                    Defendants,       )
                                      )
PPG INDUSTRIES, INC.,                 )
                    Third-Party Plaintiff,  )
                                      )
      vs.                             )
                                      )
AS AMERICA, INC. d/b/a AMERICAN       )
STANDARD BRANDS a/s/i to ELJER, INC., )
ELJER PLUMBINGWARE, INC., ELJER       )
INDUSTRIES, INC. and ELJER HOLDING    )
CORP.,                                )
                    Third-Party Defendant.  )


MEMORANDUM OPINION AND ORDER

Plaintiffs, PennEnvironment and Sierra Club, brought these citizen suits pursuant to

section 505 of the Federal Water Pollution Control Act, 33 U.S.C. § 1365(a)(1) (Clean Water

Act or CWA), section 7002(a)(1)(B) of the Resource Conservation and Recovery Act, 42 U.S.C.

§ 6972(a)(1)(B) (RCRA), and section 601(c) of the Pennsylvania Clean Streams Law, 35 P.S.

§ 691.601(c) (CSL), against Defendants, PPG Industries, Inc. (PPG), the Borough of Ford City

(Ford City), and Buffalo & Pittsburgh Railroad, Inc. (BPRI), to remedy the alleged imminent and

substantial endangerment to health and the environment presented by contamination of a site in

Armstrong County, Pennsylvania used and operated by PPG (the "Site"), contamination of

surface waters and sediments in the Allegheny River and Glade Run in the vicinity of the Site,

and contamination of groundwater associated with the Site.

PPG has filed a Third-Party Complaint against AS America, Inc., d/b/a American Standard Brands a/s/i Eljer Inc., Eljer Industries, Inc. and Eljer Plumbingware, Inc. (Eljer), seeking contribution and/or indemnity from Eljer under Pennsylvania law and specific provisions of the Hazardous Sites Cleanup Act, 35 P.S. §§ 6020.101 to 6020.1305 (HSCA), regarding any liability that PPG is responsible for relating to a portion of the Site called the Eljer Landfill. Presently pending before the Court is a motion filed by Eljer to dismiss the Third-Party Complaint. For the reasons that follow, the motion will be granted with respect to Counts II and IV and denied with respect to Counts I and III.

Facts

The Site is located in North Buffalo and Cadogan Townships in Armstrong County, Pennsylvania. It is bordered by Route 128 to the north, the Allegheny River to the south, Glade Run, a tributary of the Allegheny River, to the west and a feature that PPG terms the "Drainage Ditch" which flows southward and discharges into the Allegheny River to the east. (Revised Treatment Plan Report at 3.)[1] From 1949 until 1970, PPG used parts of the property to dispose of slurry waste and solid waste from its former glass manufacturing facility across the river in Ford City, Pennsylvania. (2009 Administrative Order at PADEP3.)[2]

Plaintiffs' two RCRA complaints describe four contiguous areas: 1) the three slurry lagoons in an area formerly used as a sandstone quarry in which PPG deposited slurry waste, the lagoons and surrounding area comprising an area of approximately 77 acres called the "slurry lagoon area" ("SLA"); 2) a landfill at the Site called the "solid waste disposal area" ("SWDA") in which PPG deposited waste beginning in the 1920s until 1967; 3) an area called the Eljer

---

[1] ECF No. 207 Ex. 1.
[2] ECF No. 207 Ex. 3.

Landfill; and 4) the ballfield area. (ECF No. 90 ¶¶ 17-18; ECF No. 91 ¶¶ 19-20; Civ. A. No. 13-1396 ECF No. 1 ¶¶ 21, 25.)

Plaintiffs have described the Eljer Landfill Area as a landfill which lies to the east of the SWDA and which was used and occupied by Eljer, Inc. from approximately 1988 through 1998 pursuant to a permit issued by Pennsylvania's Department of Environmental Resources (now the Pennsylvania Department of the Environmental Protection, "PADEP") for the beneficial reuse of waste. (Civ. A. No. 13-1396, ECF No. 1 ¶¶ 21, 25; Civ. A. No. 12-342, ECF No. 91 ¶ 19.)

PPG indicates that Eljer Industries, Inc. and/or Eljer Plumbingware, Inc. disposed of waste in the Eljer Landfill Area from 1988 until 1998 from its manufacturing facility located in Ford City, Pennsylvania. (See ECF No. 201-2 at ¶ 2; ECF No. 216 Exs. 2, 3, 12); that the Eljer Landfill was closed in approximately 1998 by regrading and adding soil cover in accordance with a closure plan that the PADEP approved in 1988; and that the area is now owned by Ford City.

Eljer states that it deposited off-spec ceramic plumbing waste (i.e., toilets, sinks) from its Ford City manufacturing plant pursuant to a beneficial reuse permit issued by the PADEP. The intent of the project was to use the waste as fill material to level and stabilize a portion of the Site so that it could be used for the expansion of the ballfield area and community park. In 1998, Eljer notified PADEP that it would no longer deposit waste in the Eljer Landfill Area and that it planned to close the beneficial reuse area in accordance with the plan approved by PADEP. In 2000, PADEP notified Eljer that it had closed the beneficial reuse area to PADEP's satisfaction. (ECF No. 234 Ex. 1.) The Eljer waste was used as fill material on approximately 2½ acres. (ECF No. 234 Ex. 2.)

Plaintiffs state that, pursuant to Pennsylvania regulations, a final closure certification will

not be issued unless the operator demonstrates that no further remedial action is required and that the facility is not causing adverse effects on the environment. 25 Pa. Code § 287.34(c)(3, 4). However, PADEP's letter to Eljer in 2000 stated that PADEP's "acceptance of your Closure Report does not constitute a waiver or release of liability for any past, present, or future contamination at the site." (ECF No. 234 Ex. 1.)

PPG notes that Plaintiffs have alleged that the Eljer Landfill Area is part of the larger Site that they claim presents an imminent and substantial endangerment to human health and/or the environment under Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), due to the alleged level of contaminants including arsenic, chromium, lead, manganese, copper, zinc, mercury, antimony, barium, beryllium, iron, vanadium, aluminum, total dissolved solids or salts, and semivolatile organic compounds. (See ECF No. 91, passim).

Relevant Procedural History

On October 14, 2015, PPG filed a motion to join Eljer as a necessary party under Rule 19 or to implead it as a third-party defendant under Rule 14(a) (ECF No. 230). On October 30, 2015, Plaintiffs filed a brief in opposition (ECF No. 234) and on November 13, 2015, PPG filed a reply brief (ECF No. 235). On November 19, 2015, an order was entered (ECF No. 236), granting PPG's motion insofar as it sought leave to implead Eljer as a third-party defendant. PPG filed its Third-Party Complaint against Eljer on December 3, 2015 (ECF No. 240).

Count I seeks contribution under Pennsylvania law. Count II alleges a cost recovery claim under sections 701 and 702 of the HSCA. Count III alleges a claim of contribution under section 705 of the HSCA. Count IV seeks indemnification under Pennsylvania law.

Eljer filed a motion to dismiss on March 10, 2016 (ECF No. 259). PPG filed a brief in opposition on April 1, 2016 (ECF No. 262), and Eljer filed a reply brief on April 11, 2016 (ECF

No. 263).

The Supreme Court has issued two decisions that pertain to the standard of review for failure to state a claim upon which relief could be granted. The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. Id. at 679. The Court of Appeals has summarized the inquiry as follows:

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

The Court of Appeals has explained that: "In deciding a Rule 12(b)(6) motion, a court

must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted). Both Eljer and PPG have referred to documents that are already in the record in this case, and the Court has also taken this approach.

In its motion, Eljer argues that: 1) it cannot be held liable under the HSCA because it had a valid permit from PADEP for depositing off-spec plumbing waste from 1988 to 1998; 2) PPG cannot bring a cost recovery action because it is a "responsible party" under the HSCA; 3) PPG cannot seek contribution or indemnity under the RCRA, so Counts I and IV of the Third-Party Complaint must be dismissed; 4) assuming that Count I seeks contribution under Pennsylvania common law, it fails because PPG is not a tortfeasor (Plaintiffs' citizen suit against it seeks only injunctive relief, not damages), nor can PPG implead Eljer under Rule 14(a) based on a theory that Eljer is liable to Plaintiffs (the Rule only allows joinder of defendants who owe liability to a third-party plaintiff); 5) assuming that Count IV seeks indemnification under Pennsylvania common law, it fails because a party that bears any responsibility for causing injury cannot seek indemnification; and 6) PPG cannot obtain attorney's fees under an HSCA private action so the request for such fees in Counts II and III should be dismissed.

In response, PPG concedes to the dismissal of its request for attorney's fees in Counts II and III (ECF No. 262 at 19). However, it argues that: 1) Eljer's waste included arsenic, barium, copper, lead, mercury, nickel, selenium, zinc, silver, molybdenum and chromium, none of which are authorized items to deposit in landfills and the permit argument is an affirmative defense, not an element of PPG's cause of action; 2) PPG is not a "responsible person" for purposes of its Third-Party Complaint, and even if it turns out to be a liable, the HSCA, which mirrors the

provisions of CERCLA,[3] would allow for cost recovery actions by "non-innocent parties"; 3) it is not raising RCRA claims against Eljer, only state law claims for contribution and indemnity, so the argument about RCRA liability is inapt; 4) Eljer's argument about contribution ignores the equitable principle of that doctrine; and 5) the allegation of indemnity is based on the theory that Eljer is primarily liable while PPG is only passively or secondarily liable.

In its reply brief, Eljer argues that: 1) its application to PADEP identified all of the elements cited by PPG and therefore the permit it received allowed for them to be deposited in the landfill without Eljer incurring liability, and the HSCA (unlike CERCLA) requires PPG, as part of its prima facie case, to demonstrate the absence of a valid permit by Eljer; 2) either PPG will not be held liable for the waste in the Eljer Landfill (in which case it has no basis for a cost recovery action against Eljer, or anyone else) or it will be held liable (in which case it is a responsible party, and CERCLA – and therefore the HSCA – only allows for cost recovery actions for response costs that are assumed voluntarily, not those incurred as a result of a court order); 3) the Pennsylvania tortfeasor act applies to joint tortfeasors, and therefore not to RCRA claims asserted by Plaintiffs, nor can it be held liable under Rule 14; and 4) the same principles apply to PPG's indemnification claim – either PPG will not be held liable (and thus it would have no need for indemnity) or it will be held liable (in which case it could not seek indemnity because it has no legal relationship with Eljer that would render PPG secondarily or passively liable to Eljer).

Counts II and III: HSCA Liability

In Counts II and III of the Third-Party Complaint, PPG seeks to recover from Eljer under the HSCA, for cost recovery and contribution, respectively.  Eljer argues that these claims are

_____

[3] The Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-28.

precluded because it deposited waste pursuant to a valid permit and because PPG is a "responsible party."

Count II invokes sections 701 and 702 of the HSCA, 35 P.S. §§ 6020.701 and 6020.702.

Section 701 provides that:

> General rule.—Except for releases of hazardous substances expressly and specifically approved under a valid Federal or State permit, a person shall be responsible for a release or threatened release of a hazardous substance from a site when any of the following apply:
>
> (1) The person owns or operates the site:
>
>> (i) when a hazardous substance is placed or comes to be located in or on a site;
>>
>> (ii) when a hazardous substance is located in or on the site, but before it is released; or
>>
>> (iii) during the time of the release or threatened release.
>
> (2) The person generates, owns or possesses a hazardous substance and arranges by contract, agreement or otherwise for the disposal, treatment or transport for disposal or treatment of the hazardous substance.
>
> (3) The person accepts hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person from which there is a release or a threatened release of a hazardous substance which causes the incurrence of response costs.

35 P.S. § 6020.701(a). See also 35 P.S. § 1101 (declaring a "release of a hazardous substance" to be a "public nuisance" and declaring any person allowing such release to "liable for the response costs caused by the release"). See Trinity Indus., Inc. v. Greenlease Holding Co., 35 F. Supp. 3d 698, 716-17 (W.D. Pa. 2014).

A responsible person is subject to strict liability under section 702, which provides as follows:

> General rule.—A person who is responsible for a release or threatened release of a hazardous substance from a site as specified in section 701 is strictly liable for the

following response costs and damages which result from the release or threatened release or to which the release or threatened release significantly contributes:

(1) Costs of interim response which are reasonable in light of the information available to the department at the time the interim response action was taken.

(2) Reasonable and necessary or appropriate costs of remedial response incurred by the United States, the Commonwealth or a political subdivision.

(3) Other reasonable and necessary or appropriate costs of response incurred by any other person.

(4) Damages for injury to, destruction of or loss of natural resources within this Commonwealth or belonging to, managed by, controlled by or appertaining to the United States, the Commonwealth or a political subdivision. This paragraph includes the reasonable costs of assessing injury, destruction or loss resulting from such a release.

(5) The cost of a health assessment or health effects study.

35 P.S. § 6020.702(a).

A regulation provides that a person who receives prior written approval from the PADEP

for the beneficial use of residual waste shall be deemed to have a residual waste processing or

disposal permit:

The beneficial use of residual waste which the Department has approved, in writing, prior to July 4, 1992, shall be deemed to have a residual waste processing or disposal permit if the person or municipality uses the residual waste in accordance with the terms and conditions of the written approval and the Department has not revoked the approval. The expiration date for permits issued pursuant to this subsection is July 4, 2002, unless a specific permit term is written as a condition of the prior written approval.

25 Pa. Code § 287.102(e).

Permit Shield

Eljer argues that, because the statute explicitly exempts "releases of hazardous substances

expressly and specifically approved under a valid Federal or State permit," PPG must

demonstrate that Eljer lacked such a permit, but Eljer has stated (and PPG has acknowledged)

that Eljer deposited off-spec plumbing waste pursuant to a valid permit issued by PADEP. PPG responds that the permit approved only the following: composite waste consisting of unfired clay moldings; ball clay and slip tailings; fired off-spec ware; and spent kiln refractories. (ECF No. 234 Ex. 2.) It argues that Eljer did not receive approval to deposit arsenic, barium and other elements. Eljer replies that PADEP did approve of the disposal of these items, which were identified in the analysis submitted with its application, dated October 16, 1987. (ECF No. 235 Ex. 1.)

The Court of Appeals for the Third Circuit has found that "cost recovery" available under § 6020.702(a)(3) of the HSCA to be "virtually identical" to that available under § 9607(a)(4)(B) of CERCLA. Agere Systems, Inc. v. Advanced Envt'l Tech. Corp., 602 F.3d 204, 236 (3d Cir. 2010). Nevertheless, there are also material differences between the two statutes. Andritz Sprout-Bauer, Inc. v. Beazer East, Inc., 12 F. Supp. 2d 391, 407 (M.D. Pa. 1998).[4] The treatment of permits is not handled in the same manner. According to the HSCA, as quoted above, a party that releases hazardous substances expressly and specifically approved under a valid Federal or State permit is not a "responsible party." CERCLA, by contrast, contains the following provision:

> Recovery by any person (including the United States or any State or Indian tribe) for response costs or damages resulting from a federally permitted release shall be pursuant to existing law in lieu of this section. Nothing in this paragraph shall affect or modify in any way the obligations or liability of any person under any other provision of State or Federal law, including common law, for damages, injury, or loss resulting from a release of any hazardous substance or for removal or remedial action or the costs of removal or remedial action of such hazardous substance. In addition, costs of response incurred by the Federal Government in

---

[4] One difference is that the HSCA recognizes liability for an additional category of party which is excluded under CERCLA, namely a former owner or operator, regardless of whether there is any evidence that disposal of hazardous substances occurred during that person's tenure of ownership. Degussa Constr. Chem. Operations, Inc. v. Berwind Corp., 280 F. Supp. 2d 393, 406 (E.D. Pa. 2003).

connection with a discharge specified in section 9601(10)(B) or (C) of this title shall be recoverable in an action brought under section 1319(b) of Title 33.

42 U.S.C. § 9607(j). Not only does the wording differ from that of the HSCA, but subsection (j) does not even appear to be a defense: it states that recovery shall be pursuant to existing law in lieu of this section. In addition, the liability provision in subsection (a) states that it is "subject only to the defenses set forth in subjection (b)," which clearly does not include subsection (j). Thus, case law under CERCLA cannot be used to address the permit shield under the HSCA.[5]

Unfortunately, referring to the HSCA does not readily resolve the matter either. On the one hand, the statute appears to exempt parties who release hazardous substances expressly and specifically approved under a valid Federal or State permit, 35 P.S. § 6020.701(a), and pursuant to 25 Pa. Code § 287.102(e), beneficial use of residual waste which the PADEP has approved in writing "shall be deemed to have a residual waste processing or disposal permit if the person … uses the residual waste in accordance with the terms and conditions of the written approval and the Department has not revoked the approval." Taken together, these provisions would suggest that Eljer's beneficial use of residual waste, as approved in writing by PADEP, would constitute a residual waste disposal permit exempting Eljer from liability.

On the other hand, PADEP informed Eljer that its application for beneficial use was "not a permit application," (ECF No. 28 Ex. 5 at 15). The permit itself referred only to "composite waste consisting of unfired clay moldings; ball clay and slip tailings; fired off-spec ware; and spent kiln refractories." (ECF No. 234 Ex. 2 at 1.) The permit further stated that it could be rescinded if "[t]he disposal of waste is creating or may create, along or in conjunction with other

---

[5] PPG cites what it claims to be an "analogous provision" of CERCLA which exempts "federally permitted releases" and has been held to be an affirmative defense, but this provision is from the section of CERCLA which imposes criminal liability upon a party who fails to notify the government about a known release. 42 U.S.C. § 9603(b)(3).

wastes, a nuisance, environmental harm, or hazard to the public's health." (ECF No. 234 Ex. 2 at

2.) Moreover, when Eljer submitted its closure report, PADEP stated that it:

> does not warrant the accuracy or veracity of any closure report. The
> Department's acceptance of your Closure Report does not constitute a waiver or
> release of liability for any past, present or future contamination at the site. The
> Department reserves the right to require additional investigation and remediation
> of any contamination at this site which is covered subsequent to the closure
> activities. The Department also reserves the right to take any appropriate
> enforcement action to ensure compliance with any applicable statute or
> regulations.

(ECF No. 234 Ex. 1.) Thus, PADEP itself did not absolve Eljer of all responsibility for potential

environmental problems at the Eljer Landfill.

Eljer's position that PPG bears the burden of demonstrating that it did not operate under a

valid permit as an element of its cause of action is not supported by any citation to case law.

Moreover, in the one case that appears to discuss this issue, the court treated the permit shield as

a defense to liability, not an element of the prima facie case to be disproved by a plaintiff.

Commonwealth of Pa., Dep't of Envt'l Resources v. Bryner, 613 A.2d 43, 47-48 (Pa. Commw.

1992) (affidavit of individual did not identify or submit permit, and permit introduced into record

did not clearly apply to releases at issue). In addition, the Bryner case was decided on a motion

for summary judgment. In this case, Eljer has filed a motion to dismiss PPG's Third-Party

Complaint. The Third-Party Complaint alleges that Eljer has released waste containing arsenic,

barium, copper, lead, mercury, nickel, selenium, zinc, silver, chromium and potentially other

hazardous substances in the Eljer Landfill. (Third-Party Compl. ¶ 53.) This allegation must be

accepted as true and therefore, even if PPG bore a burden, it would be satisfied at this time.

Eljer's argument based upon the permit defense is rejected.

Responsible Party

Eljer also argues that PPG can state no claim against it under the HSCA because PPG

itself is a "responsible party." PPG responds that, accepting the allegations of its Third-Party

Complaint as true, it is not a responsible party. Moreover, it contends that, pursuant to CERCLA

(and therefore the HSCA), even "non-innocent parties" can assert cost recovery actions pursuant

to a 2007 Supreme Court case. Eljer replies that non-innocent parties can only seek to recover

response costs they assumed voluntarily, not the costs imposed upon them by court order.

In United States v. Atlantic Research Corp., 551 U.S. 128 (2007), the Supreme Court

explained the differences between CERCLA § 107(a), which allows for a cost recovery action

between "potentially responsible parties" ("PRPs"), and CERCLA § 113(f), which allows for a

contribution claim:

> Contribution is defined as the "tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault." Black's Law Dictionary 353 (8th ed.2004). Nothing in § 113(f) suggests that Congress used the term "contribution" in anything other than this traditional sense. The statute authorizes a PRP to seek contribution "during or following" a suit under § 106 or § 107(a). 42 U.S.C. § 9613(f)(1). Thus, § 113(f)(1) permits suit before or after the establishment of common liability. In either case, a PRP's right to contribution under § 113(f)(1) is contingent upon an inequitable distribution of common liability among liable parties.
>
> By contrast, § 107(a) permits recovery of cleanup costs but does not create a right to contribution. A private party may recover under § 107(a) without any establishment of liability to a third party. Moreover, § 107(a) permits a PRP to recover only the costs it has "incurred" in cleaning up a site. 42 U.S.C. § 9607(a)(4)(B). When a party pays to satisfy a settlement agreement or a court judgment, it does not incur its own costs of response. Rather, it reimburses other parties for costs that those parties incurred.
>
> Accordingly, the remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action "to persons in different procedural circumstances." Consolidated Edison [Co. of N.Y., Inc. v. UGI Utilities, Inc.], 423 F.3d [90,] 99 [(2d Cir. 2005)]; see also E.I. DuPont de Nemours [& Co. v. United States], 460 F.3d [515,] 548 [(3d Cir. 2006)] (Sloviter, J., dissenting). Section 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under § 106 or § 107(a). And § 107(a) permits cost recovery (as distinct from contribution) by a private party that has itself incurred cleanup costs. Hence, a PRP that pays money to satisfy a settlement

agreement or a court judgment may pursue § 113(f) contribution. But by reimbursing response costs paid by other parties, the PRP has not incurred its own costs of response and therefore cannot recover under § 107(a). As a result, though eligible to seek contribution under § 113(f)(1), the PRP cannot simultaneously seek to recover the same expenses under § 107(a).

Id. at 138-39 (footnote omitted).[6]

In this case, PPG has denied all liability and has not voluntarily assumed any cleanup costs. Thus, any costs it could potentially incur would have to be pursuant to a court order and would not fall within the category recognized by the Supreme Court for cost recovery actions under CERCLA § 107(a), or by analogy, cost recovery actions under HSCA § 702(a). See United States v. Pesses, 1998 WL 937235, at *16 (W.D. Pa. May 6, 1998) (predicting that Pennsylvania Supreme Court will follow CERCLA and permit HSCA cost recovery actions to be brought only by innocent parties); United States v. National R.R. Passenger Corp., 2004 WL 1335723, at *5 (E.D. Pa. June 15, 2004) (same). Therefore, with respect to Count II, the motion to dismiss filed by Eljer will be granted.

Liability Under HSCA § 705

Section 705 of the HSCA provides as follows:

(a) General rule.—A person may seek contribution from a responsible person under section 701, during or following a civil action under section 507 or 1101. Claims for contribution shall be brought in accordance with this section and the Pennsylvania Rules of Civil Procedure. Nothing in this section shall diminish the right of a person to bring an action for contribution in the absence of a civil action under section 507 or 1101.

(b) Allocation.—In a civil action in which a liable party seeks a contribution claim, the court, or the board in an action brought under section 507 or 1101, shall enter judgment allocating liability among the liable parties. Allocation shall not affect the parties' liability to the department. The burden is on each party to show

---

[6] After issuing its holding in Atlantic Research, the Supreme Court vacated the Third Circuit's judgment in E.I. DuPont and remanded it to for reconsideration. 551 U.S. 1129 (2007). On remand, the Third Circuit held that parties who voluntarily incur cleanup costs may sue PRPs for cost recovery under § 107(a). 508 F.3d 126 (3d Cir. 2007).

how liability should be allocated. In determining allocation under this section, the court or the board may use such equitable factors as it deems appropriate.

35 P.S. § 6020.705(a) (footnotes omitted). Section 1101 provides that:

A release of a hazardous substance or a violation of any provision, regulation, order or response approved by the department under this act shall constitute a public nuisance. Any person allowing such a release or committing such a violation shall be liable for the response costs caused by the release or the violation. The board and any court of competent jurisdiction is hereby given jurisdiction over actions to recover the response costs.

35 P.S. § 6020.1101.

The Court of Appeals has held that:

to make a prima facie case of liability under HSCA, plaintiffs must establish that: (1) defendants are responsible parties; (2) there has been an actual or threatened "release" of a hazardous substance from a site; (3) "response costs" were or will be incurred; and (4) the response costs were "reasonable and necessary or appropriate."

In re Joshua Hill, Inc., 294 F.3d 482, 485 (3d Cir. 2002) (citation omitted).

Eljer argues that it cannot be a "responsible party" under section 701 (because it operated under a valid permit from PADEP), and therefore PPG may not seek contribution from it under section 705. However, as explained above, whether or not Eljer disposed of waste pursuant to a valid permit cannot be determined in the context of a motion to dismiss. Therefore, this argument is rejected and, with respect to Count III of the Third-Party Complaint, the motion to dismiss will be denied.

Count I: Contribution

In Count I, PPG asserts a claim of contribution under Pennsylvania law.[7] Eljer contends that PPG is not a tortfeasor (because the citizen suits under RCRA seek only injunctive relief and

_____

[7] Eljer also argues that PPG cannot seek contribution under the RCRA, but as PPG notes, this Court has already observed that Count I alleges a claim for contribution under Pennsylvania law, not the RCRA. (ECF No. 258 at 6.)

not monetary damages) and therefore it cannot seek contribution from Eljer as a joint tortfeasor.

PPG responds that Eljer has ignored the equitable principles of contribution.

> The Uniform Contribution Among Tort-feasors Act ("UCATA") provides that:
>
> (a) General rule.--The right of contribution exists among joint tort-feasors.
>
> (b) Payment required.-- A joint tort-feasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof.
>
> (c) Effect of settlement.--A joint tort-feasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tort-feasor whose liability to the injured person is not extinguished by the settlement.

42 Pa. C.S. § 8324.  The UCATA contains the following definition:

> As used in this subchapter "joint tort-feasors" means two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them.

42 Pa. C.S. § 8322.

Eljer argues that: "Without a tort, there can be no tort-feasor, and without a tort-feasor, there can be no right to contribution or indemnity."  Global Ground Support, LLC v. Glazer Enterprises, Inc., 581 F. Supp. 2d 669, 673 (E.D. Pa. 2008) (footnote omitted).  In that case, various entities (Global, Elliott, Fluidics, Baker) entered into contacts for the installation of equipment for the deicing of aircraft at the Philadelphia International Airport.  When one of the deicing units collapsed, it injured an employee and fell onto an airplane causing damage.  Global sued Elliott and Elliott filed a third-party complaint against Baker.  Baker argued that it could not be held liable to Elliott for the recertification and repair of the deicing equipment that Global was required to make.  The court had already held that Global could not sue Elliott in tort because of the economic loss doctrine (that is, Global's contract with Elliott meant that it had to sue Elliott for breach of contract).  Therefore, Elliott could not seek contribution from Baker.

In this case, by contrast, Plaintiffs have brought an action under the RCRA against PPG and PPG has impleaded Eljer for contribution. Eljer argues that Plaintiffs' claims against PPG are not "torts" because they are citizen suits brought under environmental statutes and Plaintiffs cannot obtain money damages by way of relief. 42 U.S.C. § 6972(a); Meghrig v. KFC Western, Inc., 516 U.S. 479, 484 (1996) (RCRA's citizen suit provision is not directed at providing compensation for past cleanup efforts[; rather] a private citizen suing under § 6972(a)(1)(B) [can] seek a mandatory injunction … or a prohibitory injunction).

Eljer is correct that a citizen suit under the RCRA does not allow for monetary damages. But it provides no support for its crabbed definition of the term "tort" and does not contend that a RCRA citizen suit is more in the nature of a "contract" rather than a "tort" (as was the case in Global Ground Support). If the universe of causes of action is limited to "contracts" and "torts," there is no doubt that a citizen suit under the RCRA is not based upon a contractual obligation, but is based upon the "tort" committed by the defendant on the environment which the citizen is attempting to enjoin.

In McMeekin v. Harry M. Stevens, Inc., 530 A.2d 462 (Pa. Super. 1987), the Pennsylvania Superior Court was presented with the question of whether the UCATA could be applied when one defendant (a restaurant owner) was sued in negligence and another (a chair manufacturer) was sued in strict products liability following an incident in which a customer was injured when the chair he was sitting on collapsed. The court held that it did apply:

> Allowing a tortfeasor found strictly liable to recover contribution from a negligent joint tortfeasor merely effectuates the Uniform Act's goal of achieving equity between tortfeasors without subverting policies of strict liability. Further, we determined this result is not in conflict with policy considerations which support strict liability for defective products. In discussing the purpose to be served by strict products liability, we said:
>
> Strict liability was intended to benefit injured consumers. It was

designed to enhance the consumer-plaintiff's chances of recovery by eliminating the burden of proving the manufacturer's negligence. Strict liability was based upon a policy determination that, as between an innocent consumer and a manufacturer of a defective product, the manufacturer should bear the loss. The focus of strict liability, therefore, must be upon the relationship existing between the plaintiff-consumer and the defendant-manufacturer. [Citations omitted.]

Id. at 241, 513 A.2d at 409.

Against the considerations behind strict products liability, we examined the aim of the Uniform Act:

The focus of the Uniform Contribution Among Tortfeasors Act, on the other hand, is upon the relationship between tortfeasors after a determination has been made that they are jointly liable for the plaintiff's injury. Thus, it is only after plaintiff's loss has been assessed against joint tortfeasors and the policy goals of strict liability have been satisfied that the Act achieves significance. It then seeks to achieve an equitable apportionment of that loss among all tortfeasors who have contributed to the loss.

Id. at 465-66 (quoting Svetz for Svetz v. Land Tool Co., 513 A.2d 403, 409 (Pa. Super. 1986)).

See also Degussa, 280 F. Supp. 2d at 410 (property owner could seek contribution under UCATA against predecessor in interest for contamination of property when genuine issues of fact existed as to predecessor's liability under HSCA and other environmental statutes). As the court had observed in Svetz:

a tortfeasor's right to receive contribution from a joint tortfeasor derives not from his liability to the claimant but rather from the equitable principle that once the joint liability of several tortfeasors has been determined, it would be unfair to impose the financial burden of the plaintiff's loss on one tortfeasor to the exclusion of the other. It matters not on which theory a tortfeasor has been held responsible for the tort committed against the plaintiff. So long as the party seeking contribution has paid in excess of his or her share of liability, it would be inequitable under the Act to deny that party's right to contribution from a second tortfeasor who also contributed to the plaintiff's injury.

513 A.2d at 407.

PPG has alleged that Eljer is responsible for some or all of the contamination of the Eljer

Landfill Area and that, if PPG is found to be liable, Eljer is liable over to PPG for its portion of the environmental hazard.  This is sufficient to state a claim for contribution under Pennsylvania law.  Therefore, with respect to Count I, the motion to dismiss will be denied.

Count IV: Indemnity

In Count IV, PPG alleges a claim for indemnification under Pennsylvania law (again, not under the RCRA).  Eljer argues that PPG cannot state a claim for indemnity because Plaintiffs have alleged that PPG is responsible for the contamination of the Eljer Landfill Area.   PPG argues that it has adequately pleaded that Eljer is primarily responsible for the contamination and PPG is only secondarily or passively liable.  Eljer replies that PPG points to no legal relationship upon which an indemnity claim could be premised.

"Under Pennsylvania law, indemnity is available only (1) "where there is an express contract to indemnify," or (2) where the party seeking indemnity is vicariously or secondarily liable for the indemnitor's acts." Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 448 (3d Cir. 2000) (citation omitted).  PPG does not allege contractual indemnification, but it does contend that Eljer dumped solid waste in the Eljer Landfill for over ten years, and thus it is primarily liable for any contamination of that area and should be responsible to PPG should PPG be found liable.  PPG admits that, if it is not found liable, it will have no need to pursue indemnification from Eljer, but it maintains that this issue cannot be resolved at this stage of the proceedings.

The Pennsylvania Supreme Court has stated that:

it is clear that the right of a person vicariously or secondarily liable for a tort to recover from one primarily liable has been universally recognized. But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a

19

defect or remedy a dangerous condition caused by the act of the one primarily responsible. In the case of concurrent or joint tortfeasors, having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity among the authorities everywhere that no right of indemnity exists on behalf of either against the other; in such a case, there is only a common liability and not a primary and secondary one, even though one may have been very much more negligent than the other. The universal rule is that when two or more contribute by their wrongdoing to the injury of another, the injured party may recover from all of them in a joint action or he may pursue any one of them and recover from him, in which case the latter is not entitled to indemnity from those who with him caused the injury.

Builders Supply Co. v. McCabe, 77 A.2d 368, 371 (Pa. 1951). See also Sirianni v. Nugent Bros., Inc., 506 A.2d 868, 870-71 (Pa. 1986) (indemnity is not a fault-sharing mechanism between a primarily responsible party and a secondarily liable party, but a fault-shifting mechanism operable only when a defendant who has been held liable to a plaintiff solely by operation of law seeks to recover his loss from a defendant who was actually responsible for the loss); Eastern Elec. Corp. of N.J. v. Rumsey Elec. Co., 2010 WL 2788294, at *3 (E.D. Pa. July 14, 2010) ("Pennsylvania courts have not extended common law indemnification to cases where the third party plaintiff—which stands in neither an employer/employee or principal/agent relationship to the third party defendant—is alleged to have breached a contract it entered with the plaintiff").

Eljer notes that there is no legal relationship between it and PPG upon which PPG could rely to invoke indemnity. PPG has not suggested otherwise. Therefore, there is no basis for an indemnification claim and, with respect to Count IV, the motion to dismiss will be granted.

In summary, Eljer's motion to dismiss will be granted with respect to Counts II and IV of the Third Party Complaint and denied with respect to Counts I and III.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PENNENVIRONMENT and SIERRA CLUB, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 12-342 |
| | ) | Member Cases: 12-527, 13-1395, |
| PPG INDUSTRIES, INC., BOROUGH OF FORD | ) | 13-1396, 14-229 |
| CITY, and BUFFALO & PITTSBURGH | ) | Magistrate Judge Mitchell |
| RAILROAD, INC., | ) | |
| Defendants, | ) | |
| | ) | |
| PPG INDUSTRIES, INC., | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| AS AMERICA, INC. d/b/a AMERICAN | ) | |
| STANDARD BRANDS a/s/i to ELJER, INC., | ) | |
| ELJER PLUMBINGWARE, INC., ELJER | ) | |
| INDUSTRIES, INC. and ELJER HOLDING | ) | |
| CORP., | ) | |
| Third-Party Defendant. | ) | |

ORDER

AND NOW, this 9th day of June, 2016, for the reasons provided in the Memorandum

Opinion,

IT IS HEREBY ORDERED that the Motion to Dismiss Third-Party Complaint filed by

Third Party Defendant AS America, Inc., d/b/a American Standard Brands a/s/i Eljer Inc., Eljer

Industries, Inc. and Eljer Plumbingware, Inc. (Eljer) (ECF No. 259) is granted with respect to

Counts II and IV and denied with respect to Counts I and III.

IT IS FURTHER ORDERED that Eljer file an answer to Counts I and III of the Third

Party Complaint by June 23, 2016.

IT IS FURTHER ORDERED that a status conference is scheduled in this case for July

13, 2016 at 9:30 a.m. in Suite 9240, United States Courthouse.

s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge