IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNENVIRONMENT and SIERRA CLUB,<br>    Plaintiffs,<br><br> vs.<br><br>PPG INDUSTRIES, INC., BOROUGH OF FORD<br>CITY, and BUFFALO & PITTSBURGH<br>RAILROAD, INC.,<br>    Defendants. | Civil Action No. 12-342<br>Member Cases: 12-527, 13-1395,<br>13-1396, 14-229<br>Magistrate Judge Mitchell |

MEMORANDUM OPINION AND ORDER

Plaintiffs, PennEnvironment and Sierra Club, bring these citizen suits pursuant to section 505 of the Federal Water Pollution Control Act, 33 U.S.C. § 1365(a)(1) (Clean Water Act or CWA), section 7002(a)(1)(B) of the Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a)(1)(B) (RCRA), and section 601(c) of the Pennsylvania Clean Streams Law, 35 P.S. § 691.601(c) (CSL), against Defendants, PPG Industries, Inc. (PPG), the Borough of Ford City (Ford City), and Buffalo & Pittsburgh Railroad, Inc. (BPRR), to remedy the alleged imminent and substantial endangerment to health and the environment presented by contamination of a site in Armstrong County, Pennsylvania used and operated by PPG (the "Site"), contamination of surface waters and sediments in the Allegheny River and Glade Run in the vicinity of the Site, and contamination of groundwater associated with the Site.

Presently pending before the Court is a motion to dismiss filed by BPRR (ECF No. 357). For the reasons that follow, the motion will be denied.

Facts

The Site is located in North Buffalo and Cadogan Townships in Armstrong County, Pennsylvania. It is bordered by Route 128 to the north, the Allegheny River to the south, Glade

Run (a tributary of the Allegheny River) to the west and residential property to the east. (Revised Treatment Plan Report at 3; Baker Remedial Investigation Report (Baker RIR), Vol. 1, at 1-1 to 1-2.)[1]

The PPG Site includes an area known as the Slurry Lagoon Area (SLA) where PPG deposited slurry waste in three lagoons it created in an area it formerly used as a sandstone quarry. (Revised Treatment Plan Report at 4 (PPG0050748).) The SLA is bordered by Route 128 to the north, the Allegheny River and a railroad to the south, Glade Run to the west, and an area that PPG refers to the "solid waste disposal area" (SWDA) to the east. Baker RIR, p. 1-3 (PPG001819). A stream which PPG refers to as the Drainage Ditch runs between the SLA and SWDA. (Revised Treatment Plan Report at 16 (PPG0050760).)

The Amended Complaints allege that leachate seeps through the cliff face of the south side of the Site and is then discharged into the Allegheny River through culverts under the railroad tracks at the base of the cliffs. (CWA Compl. at 9[2]; RCRA Compl. at 9.) Subsequent complaints also state that the Allegheny River forms the southern boundary of the Site and that between the cliff face of the Site and the Allegheny River lie wetlands and railroad tracks that are within a right-of-way held by BPRR. (Second CWA Compl. at 8-9; Second RCRA Compl. at 8; Third CWA Compl. at 8.) Plaintiffs note that, in its answers to these complaints, BPRR admitted that "it operates and maintains railroad tracks within its legal right-of-way." (BPRR Answer to Second CWA Compl. at 3; BPRR Answer to Second RCRA Compl. at 3; BPRR Answer to Third CWA Compl. at 4.)[3]

---

[1] ECF No. 306 Ex. 1; ECF No. 306 Ex. 2.
[2] ECF No. 1.
[3] ECF Nos. 133, 134, 158.

Procedural History

On January 13, 2012, Plaintiffs gave notice of their intent to file suit to the Administrator of the Environmental Protection Agency (EPA), the Pennsylvania Department of Environmental Protection (PADEP) and Defendants as required by the CWA, CSL and RCRA. 33 U.S.C. § 1365(b)(1)(A); 35 P.S. § 691.601(e); 42 U.S.C. § 6972(b)(2)(A). (CWA Compl. ¶ 4 & Ex. 1; RCRA Compl. ¶ 4 & Ex. 1.) On March 20, 2012, Plaintiffs filed a complaint against PPG and Ford City under the CWA and the CSL (the "CWA Complaint"). The case was docketed at Civ. A. No. 12-342.

On April 20, 2012, Plaintiffs filed another complaint against PPG and Ford City under the RCRA (the "RCRA Complaint"). They alleged that PPG is a generator and/or transporter of the solid or hazardous waste at the Site, as well as an owner and/or operator of the site, and has contributed to the past or present handling, storage, treatment, transportation, or disposal of the solid or hazardous waste at the Site, thereby presenting an imminent and substantial endangerment to health or the environment. This case was docketed at Civ. A. No. 12-527. On May 25, 2012, Plaintiffs filed a motion to consolidate the two cases (ECF No. 11). On May 29, 2012, an order was entered granting this motion and consolidating the cases at No. 12-342 (ECF No. 12).

On September 25, 2013, Plaintiffs filed a second CWA/CSL complaint ("Second CWA Complaint"), including additional instances of alleged pollution and adding BPRR as a defendant. The case was docketed at No. 13-1395.

On September 25, 2013, Plaintiffs also filed a second RCRA complaint ("Second RCRA Complaint"), which included BPRR as a defendant, and was docketed at No. 13-1396. On September 30, 2013, an order was entered consolidating the Second CWA Complaint and the

Second RCRA Complaint at No. 12-342.

On September 26, 2013, Plaintiffs filed a motion to amend the complaints to add BPRR as a defendant (ECF No. 80). The Court granted this motion on October 9, 2013 and on October 10, 2013, Plaintiffs filed two Amended Complaints (ECF Nos. 90, 91) which named BPRR as a necessary defendant under Rule 19.

Finally, on February 18, 2014, Plaintiffs filed a third CWA/CSL complaint against PPG, Ford City and BPRR, docketed at No. 14-229 ("Third CWA Complaint"). On April 8, 2014, Plaintiffs filed a motion to consolidate the case and on April 9, 2014, an order was entered consolidating the case at No. 12-342.

The complaints all state that Plaintiffs are not pursuing claims or specific relief against Ford City or BPRR, but that they are joined as indispensable parties under Rule 19(a). (CWA Compl. ¶ 13 & at 23-24; RCRA Compl. ¶ 15 & at 11; Second CWA Compl. ¶¶ 5-6, 17-18 & nn.1-2 & at 30; Second RCRA Compl. ¶¶ 5-6, 19-20 & nn.1-2 & at 15; Am. CWA Compl. ¶¶ 13-14 & at 24; Am. RCRA Compl. ¶¶ 15-16 & at 11; Third CWA Compl. ¶¶ 19-20 & at 19.)

On February 28, 2013, Ford City filed a motion to dismiss the RCRA Complaint on the ground that no claims were alleged against it (ECF No. 29). On August 8, 2013, a Memorandum Opinion and Order was filed that denied this motion on the basis that Ford City was an indispensable party under Rule 19 (ECF No. 66). BPRR filed answers to the Second CWA and Second RCRA Complaints (ECF Nos. 103, 104) on November 12, 2013. On January 26, 2014, BPRR filed answers to the Amended CWA and RCRA Complaints (ECF Nos. 133, 134) and on April 28, 2014, it filed an answer to the Third CWA Complaint (ECF No. 158).

On August 6, 2018, BPRR filed a motion for a settlement conference, and it requested that the Court schedule the conference during the month of August. (ECF Nos. 346, 347.)

Plaintiffs opposed this motion on the grounds that a settlement conference was already scheduled for November 15, 2018 and that preparing for a settlement in August would prejudice them as they prepared for trial (ECF No. 349). On August 15, 2018, the Court granted BPRR's motion for a settlement conference, but scheduled it to occur on November 15, 2018 (ECF No. 350).

On August 27, 2018, BPRR filed the current motion to dismiss (ECF No. 357). On September 17, 2018, Plaintiffs filed a brief in opposition (ECF No. 373) and on September 20, 2018, BPRR filed a reply brief (ECF No. 375).

Standard of Review

> Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action where the court lacks jurisdiction over the subject matter of that action. Fed. R. Civ. P. 12(b)(1). Because lack of ripeness impedes justiciability and thus the subject matter jurisdiction of the district court, ripeness claims should be raised in a Rule 12(b)(1) motion to dismiss rather than in a summary judgment motion. Taylor Inv., Ltd. v. Upper Darby Twp., 983 F.2d 1285, 1290 (3d Cir. 1993).

Knute Enterprises, Inc. v. Dupont Borough, 2007 WL 2844952, at *2 (M.D. Pa. Sept. 26, 2007).

BPRR argues that Plaintiffs' claims against it are contingent, speculative and unripe because BPRR is included in the case only on the possibility that it might be involved in the relief sought against PPG. But if Plaintiffs are successful and BPRR refuses access to the railroad tracks—which to date it has not done—BPRR notes that access can be achieved by other means. See 35 P.S. §§ 691.5(b)(8), 6018.104(7) (authorizing PADEP to access property as needed to implement site investigation or remediation).

Plaintiffs respond that the Court held in 2013 that BPRR is a proper defendant in this action under Rule 19 and that the Court refused to dismiss Ford City on similar grounds, holding that parties with a property interest that is affected by Plaintiffs' claims are necessary parties in this case. They further contend that BPRR's ripeness argument is irrelevant—Plaintiffs' claims

5

are against PPG and are ripe and BPRR is a proper defendant. Plaintiffs argue that BPRR's willingness to allow access shows why it is a necessary party and yet BPRR has not been released from the case because it has not guaranteed future access, but has insisted on formal agreements. Finally, Plaintiffs argue that BPRR's participation in the remediation is necessary to resolve this dispute.

In a reply brief, BPRR argues that Plaintiffs' Rule 19 analysis is not the same as a ripeness inquiry, and that Plaintiffs merely theorize about possible ways in which BPRR might be needed to allow access for purposes of a remedy. In addition, BPRR argues that even if Rule 19 applies, it never had the opportunity to address the issue previously.[4]

Ripeness

As recently summarized by the Court of Appeals:

> While it is "emphatically the province and duty of the judicial department to say what the law is," Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803), Article III of the Constitution limits the federal judiciary's authority to exercise its "judicial Power" to "Cases" and "Controversies." U.S. Const. art. III, § 2. This case-or-controversy limitation, in turn, is crucial in "ensuring that the Federal Judiciary respects the proper—and properly limited—role of the courts in a democratic society." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006) (internal quotation marks omitted). And courts enforce it "through the several justiciability doctrines that cluster about Article III," including "standing, ripeness, mootness, the political-question doctrine, and the prohibition on advisory opinions." Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 137 (3d Cir. 2009) (internal quotation marks omitted)….
>
> At its core, ripeness works "to determine whether a party has brought an action prematurely ... and counsels abstention until such a time as a dispute is

---

[4] This assertion is not exactly accurate—after Plaintiffs amended the Complaints to include BPRR, BPRR filed answers to the Complaints, rather than motions to dismiss on the ground that it was not a necessary party. BPRR also provides no reason why it could not have raised this issue previously. Nevertheless, as BPRR notes, ripeness is an issue of subject matter jurisdiction that can be raised anytime and even by the Court sua sponte.

sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." Peachlum v. City of York, 333 F.3d 429, 433 (3d Cir. 2003). Various concerns underpin it, including whether the parties are in a "sufficiently adversarial posture," whether the facts of the case are "sufficiently developed," and whether a party is "genuinely aggrieved." Id. at 433-34. In Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), the Supreme Court laid out two principal considerations for gauging ripeness including (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." Id. at 149, 87 S.Ct. 1507. And in Susan B. Anthony List v. Driehaus, ___ U.S. ____, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014), the Court illustrated that when evaluating ripeness as a matter of standing in preenforcement challenges, we ask whether the plaintiff has "alleged a sufficiently imminent injury for the purposes of Article III." Id. at 2338.

Plains All Am. Pipeline L.P. v. Cook, 866 F.3d 534, 538–39 (3d Cir. 2017) (footnote omitted).

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998). The Court of Appeals has held that, when "the plaintiff's action is based on a contingency, it is unlikely that the parties' interests will be sufficiently adverse to give rise to a case or controversy within the meaning of Article III." Armstrong World Indus., Inc. by Wolfson v. Adams, 961 F.2d 405, 412 (3d Cir. 1992).

BPRR contends that, for it to be included in a binding judgment in this case, the following uncertain future events must all come to pass:

First, the Court must decide that some form of coercive injunctive relief is appropriate, beyond the steps that PPG is already taking in coordination with PADEP.

Second, the Court must determine that these measures will require access to BPRR's property, or might otherwise affect BPRR's railroad operations.

Third, BPRR must refuse to provide reasonable access to the property, something it has never done to date.

7

Fourth, necessary access to BPRR's property must be unavailable through other mechanisms, including PADEP's statutory authority.

BPRR argues that any claimed need for a judgment against it "rests upon contingent events that may not occur as anticipated, or indeed may not occur at all"; that it is "too speculative whether the problem [Plaintiffs] present[] will ever need solving," and thus the Court can only "find the legal issues [Plaintiffs] raise[] not yet fit for [the Court's] consideration." Texas, 523 U.S. at 300, 302. See Thompson v. Horsham Township, 576 F. Supp. 2d 681, 691 (E.D. Pa. 2008) (property owners' claims rested on future, contingent events when township had not given even preliminary approval to various plans regarding stormwater management); New Hanover Township v. U.S. Army Corp of Engr's, 992 F.2d 470, 473 (3d Cir. 1993) (challenge to construction of municipal waste landfill was unripe because the state had not yet granted a necessary water quality certificate).

Plaintiffs contend that BPRR's discussion of ripeness is irrelevant: their claims are ripe against PPG (the only defendant whose liability is at issue) and BPRR is a proper defendant in the case as a necessary party pursuant to Rule 19(a). They further argue that BPRR misrepresents the degree of its willingness to allow access and the fact that it has not guaranteed access is the reason why Plaintiffs have not released BPRR from the case. Finally, they argue that whether PADEP has independent authority to enter the right-of-way does not address the issue of whether the parties to this case have such access. See Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1013-14 (3d Cir. 1987) (Radice-East, the owner of the Union Switch property and buildings, was a necessary and indispensable party to Steel Valley's action seeking to enjoin any dismantling, razing or demolishing of the buildings until its plan of acquisition could be implemented, even if Radice-East did not yet have possession of the

property); Raritan Baykeeper, Inc. v. NL Industries, Inc., 2013 WL 103880, at *21 (D.N.J. Jan. 8, 2013) (even after the plaintiffs withdrew their claim against Middlesex County, they did not release it from the case because it owned property which would likely need to be accessed during remediation); Ashley II of Charlestown, LLC v. PCS Nitrogen, Inc., 2008 WL 2462862, at *7 (D.S.C. June 13, 2008) (landowners were necessary parties in CERCLA action when their property had to be accessed during remediation); Lykins v. Westinghouse Elec., 710 F. Supp. 1122, 1124 (E.D. Ky. 1988).

BPRR attempts to distinguish these cases, either because they involved property owners as opposed to owners of rights-of-way or because the issue of ripeness was not discussed. However, it cites no authority for the proposition that an owner of a right-of-way should be treated any differently than a landowner, particularly when the right-of-way owner has insisted on being involved in discussions concerning access. And it cites no authority to support its suggestion that ripeness is determined as to each party in the case, as opposed to the "case or controversy" generally. All parties agree that the Court has subject matter jurisdiction over Plaintiffs' CWA, CSL and RCRA claims against PPG to remedy the alleged imminent and substantial endangerment to health and the environment presented by contamination at the Site. The question presented is whether BPRR's presence is needed to fully implement a potential remedy because of its right-of-way.

Plaintiffs point out that the Amended Complaints allege that the slurry lagoons of the PPG Site are bordered on the south by the Allegheny River, that the leachate seeps through the cliff face of the south side of the Site and is then discharged into the Allegheny River through culverts under the railroad tracks at the base of the cliffs, and that these railroad tracks are within a right-of-way held by BPRR. They note that this Court held in August 2013 that Ford City's

9

motion to dismiss, based on the argument that it had no involvement with the waste, had to be denied because "any decision in this case will affect its interest in the Site as property owner and thus it is properly joined as an indispensable party under Rule 19." (ECF No. 66 at 69.)[5]

BPRR attaches to its brief a Site Access Agreement between it and PPG dated October 23, 2017 (ECF No. 358 Ex. A), to demonstrate that it has agreed to allow reasonable access for investigation and remediation. Plaintiffs respond that this agreement, along with a September 16, 2013 Right of Entry Letter Agreement previously entered into between the parties (ECF No. 81-2), show that BPRR requires formal access agreements from both them and PPG to access and conduct work on its right-of-way, which demonstrates BPRR's ongoing property interest in the right-of-way.

BPRR replies that Plaintiffs rest entirely upon their assertion (which BPRR disputes) that it is a necessary and indispensable party, without addressing the jurisdictional principles that it has raised. It cites a case in which the SEC sued a bank employee (Cherif) for securities fraud and joined as a defendant Sanchou, the holder of the accounts that were allegedly used to facilitate the illegal trades at issue and into which the money was deposited. The Seventh Circuit explained that:

> The SEC is understandably anxious to recover Cherif's ill-gotten gains, but neither of the SEC's arguments can support an exercise of jurisdiction over Sanchou to justify divesting him of the funds now in his accounts. Rule 19 alone cannot give the district court subject matter jurisdiction over the dispute with

---

[5] Plaintiffs contend that the "law of the case" doctrine bars any further litigation on this issue because the Court previously ruled on it when permitting BPRR to be added as a defendant and in denying Ford City's motion to dismiss. BPRR responds that it had no opportunity to articulate its position because the issue was decided before it was made a defendant in case. The Court need not address the law of the case issue, which is discretionary in any event, because Plaintiffs have demonstrated that BPRR is a necessary party.

10

> Sanchou because Rule 19 is not a source of federal jurisdiction. Graf v. Elgin, Joliet & Eastern Railway Co., 697 F.2d 771, 775 (7th Cir. 1983). The rule supplies a mechanism by which interested parties can be joined, but it presumes the preexistence of subject matter jurisdiction over some cause of action alleged against the defendant.

S.E.C. v. Cherif, 933 F.2d 403, 413 (7th Cir. 1991). See also Hodges by Hodges v. Public Bldg. Comm'n of Chicago, 864 F. Supp. 1493, 1508 (N.D. Ill. 1994) (although the Public Building Commission might be a necessary party to implement plaintiffs' claims against the Chicago Board of Education seeking expansion of a high school, because Title VI was not applicable to the PBC, the court had no subject matter over this claim and would not even address the Rule 19 inquiry).

In this case, however, the Court already has subject matter jurisdiction over Plaintiffs' claims pursuant to two federal environmental laws. Plaintiffs are not using Rule 19 to expand jurisdiction over BPRR, against which Plaintiffs assert no claims. Rather, BPRR is included as a defendant in order to allow for the fashioning of a complete remedy, which could include access to BPRR's right-of-way.

Based upon BPRR's motion for a settlement conference and the fact that it has insisted on formal agreements to allow access for Site investigation, Plaintiffs have demonstrated that a complete remedy cannot be fashioned without keeping BPRR in the case with respect to obtaining access to BPRR's right-of-way to implement aspects of a potential remediation. Therefore, BPRR's motion to dismiss will be denied.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNENVIRONMENT and SIERRA CLUB,<br>    Plaintiffs,<br><br> vs.<br><br>PPG INDUSTRIES, INC., BOROUGH OF FORD<br>CITY, and BUFFALO & PITTSBURGH<br>RAILROAD, INC.,<br>    Defendants. | Civil Action No. 12-342<br>Member Cases: 12-527, 13-1395,<br>13-1396, 14-229<br>Magistrate Judge Mitchell |

## ORDER

AND NOW, this 26th day of October, 2018, for the reasons provided in the Memorandum Opinion,

IT IS HEREBY ORDERED that the Motion to Dismiss filed by Defendant Buffalo & Pittsburgh Railroad, Inc. (ECF No. 357) is denied.

        s/Robert C. Mitchell_____
        ROBERT C. MITCHELL
        United States Magistrate Judge