IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNENVIRONMENT and SIERRA CLUB,<br>Plaintiffs,<br><br>vs.<br><br>PPG INDUSTRIES, INC., BOROUGH OF FORD CITY, and BUFFALO & PITTSBURGH RAILROAD, INC.,<br>Defendants. | Civil Action No. 12-342<br>Member Cases: 12-527, 13-1395,<br>13-1396, 14-229<br>Magistrate Judge Dodge |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, PennEnvironment and Sierra Club, bring these citizen suits pursuant to section 505 of the Federal Water Pollution Control Act, 33 U.S.C. § 1365(a)(1) (Clean Water Act or CWA), section 7002(a)(1)(B) of the Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a)(1)(B) (RCRA), and section 601(c) of the Pennsylvania Clean Streams Law, 35 P.S. § 691.601(c) (CSL), against Defendants, PPG Industries, Inc. (PPG), the Borough of Ford City (Ford City), and Buffalo & Pittsburgh Railroad, Inc. (BPRR), to remedy the alleged imminent and substantial endangerment to health and the environment presented by contamination of a site in Armstrong County, Pennsylvania used and operated by PPG (the "Site"), contamination of surface waters and sediments in the Allegheny River and Glade Run in the vicinity of the Site, and contamination of groundwater associated with the Site.[1]

Presently pending before the Court is PPG's Motion for Reconsideration (ECF No. 426) of the Court's May 22, 2019 Memorandum Opinion and Order (ECF No. 420), which denied

---

[1] Plaintiffs have indicated that they are not pursuing claims against or seeking specific relief from Ford City or BPRR, but have joined these defendants as indispensable parties.

PPG's Motion for a Determination that Injunctive Relief Under RCRA is Futile as a Matter of Law (ECF No. 391) ("Motion for Determination"). For the reasons that follow, PPG's Motion for Reconsideration will be denied.

In its Motion for Determination, PPG had argued that because it had worked with the Pennsylvania Department of Environmental Protection ("PADEP") under the Pennsylvania Land Recycling and Environmental Remediation Standards Act (commonly known as "Act 2") and developed a Comprehensive Site-Wide Remedy—which it is obligated to fulfill pursuant to a Consent Order and Agreement ("COA") signed by PPG and PADEP on April 2, 2019–any further injunctive relief that Plaintiffs could potentially seek with respect to their RCRA claim has been rendered futile as a matter of law.

The Motion for Determination was fully briefed and a hearing was held on April 9 and 10, 2019. As noted, on May 22, 2019, a Memorandum Opinion and Order ("May Opinion") was issued denying this motion without prejudice.

PPG filed the instant motion on June 19, 2019 (ECF No. 426). This matter has been fully briefed, including the submission of an amicus brief by the Greater Pittsburgh Chamber of Commerce, the Pennsylvania Chamber of Business and Industry and the Pennsylvania Manufacturers Association.

I. Standard of Review

A motion for reconsideration of an interlocutory order is governed by Federal Rule of Civil Procedure 54(b). *Cezair v. JP Morgan Chase Bank N.A.*, Civ. Action No. 13-2928, 2014 WL 4955535, at *1 (D. Md. Sept. 30, 2014) ("It is well-established that the appropriate Rule under

which to file motions for reconsideration of an interlocutory order is Rule 54(b).").[2] As Judge Conti recently observed:

> Although "district courts have more discretion in reconsidering interlocutory orders than in revising final judgments, ... the law of the case doctrine guides courts to exercise their discretion with a light hand, even with respect to interlocutory orders, and only to grant motions for reconsideration in 'extraordinary circumstances.'" *Foster v. Westchester Fire Ins. Co.*, Civ. Action No. 09-1459, 2012 WL 2402895, at *4 n.1 (W.D. Pa. June 26, 2012) (citing *In re Anthanassious*, 418 F. App'x 91, 95-96, 96 n. 5 (3d Cir. 2011), and quoting *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 438–39 (3d Cir. 2009) ). Thus, while " '[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, ... as a rule courts should be loath[] to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice.'" *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d at 439 (3d Cir. 2009) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)).

*Walney v. SWEPI LP*, 2018 WL 4076919, at *2 (W.D. Pa. Aug. 27, 2018). A party seeking reconsideration must show at least one of the following: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

In moving for reconsideration, PPG does not argue that there has been an intervening change in the law or that new evidence is available. Rather, it contends that the Court committed

---

[2] Rule 54(b) states that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed.R.Civ.P. 54(b).

3

a "clear error of law" that creates a "manifest injustice."[3]

II. The May 22, 2019 Opinion

In its May Opinion, the Court made several determinations that are relevant for purposes of PPG's Motion for Reconsideration. First, it concluded that while a mandatory injunction requiring PPG to take action "necessary" under RCRA to prevent "imminent and substantial endangerment to health or the environment," 42 U.S.C. § 6972(a)(1)(B), is an extraordinary remedy that is only granted sparingly by the courts, *Trinity Industries, Inc. v. Chicago Bridge & Iron Co.*, 735 F.3d 131, 138-39 (3d Cir. 2013), PPG had the burden as the movant to demonstrate that any injunctive relief that Plaintiffs might request has been rendered futile.

The Court also found that neither Plaintiffs nor PPG had accurately represented the applicable legal standard. Plaintiffs' position was that relief is warranted whenever a plaintiff objects to a defendant's proposed remediation while PPG contended that relief cannot be granted once a remediation is in place unless there is a "substantial breakdown" in the administrative process. In contrast, the Court held that when a remedial scheme is in place and a plaintiff presents expert evidence calling into question whether the remedial scheme is sufficient to address any danger to health and the environment under RCRA, the court must evaluate this evidence and decide the issue.

In the May Opinion, the Court also concluded that a remedy approved by PADEP is not entitled to substantial deference in a RCRA case.

---

[3] The May 22, 2019 Opinion was issued by Judge Mitchell prior to his retirement. This case was reassigned to the undersigned on June 7, 2019.

4

Finally, because the parties presented equally credible expert testimony as to the effectiveness and efficiency, or lack thereof, of the Comprehensive Site-Wide Remedy, the Court found that PPG failed to demonstrate that all potential injunctive relief that could be sought by Plaintiffs was rendered futile as a result of the PADEP-approved Comprehensive Site-Wide Remedy.

In its Motion for Reconsideration, PPG makes three principal arguments. First, it contends that the Court incorrectly interpreted the Third Circuit's decision in *Trinity Industries, Inc. v. Chicago Bridge & Iron Co.*, 735 F.3d 131, 138-39 (3d Cir. 2013). Specifically, PPG argues that the Court erred by failing to preclude further injunctive relief when a remedial scheme was in place and improperly focusing on individual components of the remediation as opposed to the "remediation scheme as a whole." PPG next argues that the Court erred by failing to give proper deference to PADEP, a state agency with expertise in environmental matters which is authorized to implement RCRA in Pennsylvania. Finally, because the Court found that the experts presented by PPG and Plaintiffs gave equally credible opinions, PPG contends that it would be impossible for Plaintiffs to obtain a mandatory injunction given their "extraordinarily high" burden, nor could Plaintiffs demonstrate that further injunctive relief under RCRA is "necessary." Each of these arguments will be addressed below.

III. Analysis

Impact of the *Trinity* Case

In *Trinity Industries, Inc. v. Chicago Bridge & Iron Co.*, 735 F.3d 131, 138-39 (3d Cir. 2013), Trinity, the owner of an industrial site, brought suit against the former owner of the site ("CB&I"), seeking injunctive and monetary relief for the remediation that it was undertaking pursuant to a court order. The district court granted CB&I's motion for summary judgment on the

RCRA claim and concluded that there was no "meaningful relief available under RCRA in light of the Consent Order" that Trinity had entered into with PADEP to fund and conduct "response actions" according to a schedule approved by PADEP. The Third Circuit Court of Appeals affirmed the district court's decision because Trinity—which did not contend that the remediation scheme put in place by the Consent Order was deficient or ineffective—failed to demonstrate that future participation by CB&I in the remediation effort would aid in the minimization threats to human health or the environment. "That is, Trinity has not shown that CB&I's participation is 'necessary' as RCRA § 7002(a)(1)(B) requires, now that the conditions of the Consent Order are in place and appear to be effective." 735 F.3d at 140.

In rendering its decision, the Court of Appeals distinguished a prior case in which it affirmed a grant of injunctive relief under RCRA when there was "a substantial breakdown in the agency process," such that there was "strong doubt as to whether there *is* a [state-ordered] process to override" *Interfaith Cmty. Org. v. Honeywell Int'l Inc.*, 399 F.3d 248, 265, 267 (3d Cir. 2005) ("*ICO/Honeywell*"). *See Trinity,* 735 F.3d at 140.

PPG contends that *Trinity* holds that unless there is a substantial breakdown in the agency process as was the case in *ICO/Honeywell*, a court should defer to the remedial scheme approved by the state agency. In the May Opinion, after a thorough briefing and analysis by the parties, the Court rejected this as an unreasonable reading of *Trinity*, and PPG has offered no new basis to challenge this conclusion. As the Third Circuit Court of Appeals has held, "citizens need not exhaust or rely upon other resources or remedies before seeking relief under these amendments.... Courts should consider the availability of other alternatives ... but there is no requirement to defer

to them." *ICO/Honeywell*, 399 F.3d at 267.[4]

PPG also argues, as it did previously, that the issue under consideration is "the administrative process as a whole" rather than the specifics of the Comprehensive Site-Wide Remedy. In the May Opinion, the Court rejected this argument, noting that *Trinity* "stated that the conditions of the Consent Order appeared be effective, not the remedial scheme. In addition, PPG has not explained how a determination can be made that a remedial scheme is effective." (ECF No. 420 at 20 n.12.) As Plaintiffs note, PPG offers no support for its position, which presumably would preclude further injunctive relief in any case in which PADEP was engaged in some kind of "administrative process." In short, this is simply another way of characterizing PPG's position that injunctive relief is only permitted when there is a "substantial breakdown" in the agency process. For all of the reasons cited above, this argument is unavailing.

Neither *Trinity* nor *ICO/Honeywell* address a situation in which a state agency has approved a remedial scheme but the plaintiff presented evidence that this remediation was ineffective under RCRA. The May Opinion noted that in two recent cases, the Court of Appeals for the Seventh Circuit, citing *Trinity,* addressed the issue of whether the plaintiffs met their burden of demonstrating that they were entitled to a mandatory injunction when a state agency-approved remediation was underway.[5] In *LAJIM, LLC v. General Electric Co.*, 917 F.3d 933 (7th Cir. 2019),

---

[4] PPG quotes the district court's holding in *Trinity* that "it would be impossible to deem a mandatory injunction 'necessary' for § 7002(a)(1)(B) purposes in a case like this one, in which a remedial scheme is already underway." 735 F.3d at 140. But the holding of the Court of Appeals was more nuanced than that. The court cited the fact that Trinity had not challenged the remediation scheme and had not shown that CB&I's participation was "necessary."

[5] Although decisions from the Seventh Circuit are not binding on this Court, the cases cited by the Court in the May Opinion represent well-reasoned decisions that are instructive. Indeed, the parties discussed the *LAJIM* case at length in their briefs regarding PPG's futility motion and PPG has not suggested that the Third Circuit would have decided the case differently.

7

*petition for cert. docketed*, (U.S. June 21, 2019) (No. 18-1564), plaintiffs sought a mandatory injunction to order General Electric to investigate and remediate groundwater contamination emanating from its plant even though General Electric had entered into a consent order with the state agency (IEPA). The court noted that "the denial of injunctive relief after a district court has found a risk of imminent and substantial danger to public health or to the environment should be rare. Here, however, plaintiffs failed to provide the district court with any evidence that injunctive relief, in addition to what the IEPA had already ordered in the state action, would improve the environment and not cause additional harm." *Id.* at 942. At a hearing, General Electric's expert provided "reasonable, rational and credible bases explaining why certain actions were taken and others were not," but the plaintiffs' expert merely testified that more investigation and testing was required and declined to make a recommendation regarding what additional specific cleanup was recommended. The plaintiffs never conducted their own investigation to contradict GE's test results and therefore did not provide evidence that would be sufficient for the court to order relief in addition to what the IEPA already required. The Court of Appeals commended the district court for "walking a fine line between supplementing and supplanting the Consent Order." *Id.* at 948. It concluded that RCRA "does not require a court-ordered cleanup where the court has not found such action necessary to prevent harm to the public or the environment, especially where, as here, an expert the court found credible testified that additional cleanup would cause further harm. *Id.* at 949.[6] *See also Liebhart v. SPX Corp.*, 917 F.3d 952, 963-64 (7th Cir. 2019).

---

[6] PPG does not address *LAJIM* or the Court's discussion of it.

In the May Opinion, the Court concluded that, unlike the hearings in *LAJIM* and *Liebhart*, the hearing in this case elicited dueling narratives from equally credible experts as to whether PPG's remedy would fulfill RCRA's requirement of doing all that is "necessary" to prevent a risk of imminent and substantial endangerment to human health or the environment at the Site. Plaintiffs' experts provided testimony regarding how PPG's remedy and PADEP's proceedings do not adequately protect the public and the environment and described the nature of the relief the Court should order. Specifically, Plaintiffs offered expert opinions that PPG did not fully delineate the waste at the Site; that its proposed remedies for the Slurry Lagoon Area (SLA) and the Solid Waste Disposal Area (SWDA) are ineffective and inefficient for multiple reasons; that viable alternatives (such as a cap and upgradient groundwater diversion system) would address these problems that PPG's proposals do not address; and that PPG's approach would require continued maintenance of the remedy for centuries even though the COA will terminate six months after the remedy is implemented.

PPG also presented credible expert testimony on these questions, but the parties' competing credible expert opinions will have to be evaluated at trial.

Deference to PADEP's Determinations

PPG next argues that the Court failed to give appropriate deference to PADEP's approval of the Comprehensive Site-Wide Remedy. PPG argues that PADEP is the state agency with knowledge of environmental rules and that: "If Plaintiffs' goal is ultimate and complete remediation of site, this goal would be achieved faster and more efficiently through the efforts of the [agency] without interference from the Court." *See Friends of Santa Fe County v. LAC Minerals, Inc.*, 892 F. Supp. 1333, 1350 (D.N.M. 1995). *See also Read v. Corning, Inc.*, 351 F. Supp. 3d 342, 350 (W.D.N.Y. 2018); *Clean Harbors, Inc. v. CBS Corp.*, 875 F. Supp. 2d 1311,

1320 (D. Kan. 2012); *McCormick v. Halliburton Co.*, 2012 WL 1119493, at *2-3 (W.D. Okla. Apr. 3, 2012). In a footnote, PPG acknowledges that these cases concerned the doctrine of primary jurisdiction,[7] but argues that "the pronouncements regarding deference to agency expertise and actions are equally applicable here." (ECF No. 427 at 11 n.4.)

In the May Opinion, the Court rejected PPG's attempt to rely upon primary jurisdiction decisions because they are inapplicable in this action. (ECF No. 420 at 22 n.14.) Notably, in the Court's first opinion in this case (issued on August 8, 2013), it rejected PPG's attempt to rely upon these and similar cases as inconsistent with the holding of the Court of Appeals in *Raritan Baykeeper v. NL Industries, Inc.*, 660 F.3d 686, 692 (3d Cir. 2011), and held that primary jurisdiction does not apply in this case. (ECF No. 66 at 31-32.) *See also Interfaith Cmty. Org. v. PPG Indus., Inc.*, 702 F. Supp. 2d 295, 311 (D.N.J. 2010) ("*ICO/PPG*") (RCRA citizen suit in which the court held "Congress clearly contemplated that the environmental issues posed here are within the competency of the courts when it created a citizen suit provision"). As the *ICO/PPG* court in noted in response to PPG's argument that the plaintiff was collaterally attacking PADEP's actions, "this [is] the very nature of an imminent and substantial endangerment citizen suit: it allows citizens to seek judicial remedies where, allegedly, an agency has failed to protect people or the environment from danger. To abstain on the basis of collateral attack here would defeat Plaintiffs' statutory right to a citizen suit." *Id.* at 314. *See also Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 499 (7th Cir. 2011) ("Congress enacted the citizen-suit provisions of RCRA and other environmental laws because the world is not ideal, because government agencies face many

---

[7] Primary jurisdiction is a doctrine which enables courts to abstain from hearing a case and refer the matter to an administrative agency with "special competence" to address the matter. *Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993).

demands on their resources, because administrations and policy priorities change, and because regulatory agencies are subject to the phenomenon knowns as 'agency capture.'")[8] PPG has provided no basis for disturbing this law of the case.

In its 2013 Memorandum Opinion, the Court concluded only that based upon the evidence presented, PADEP administers the NPDES permit application program in Pennsylvania. The court did not find that RCRA charges PADEP with enforcing environmental laws. (ECF No. 66 at 28, 33.) In the May Opinion, the Court observed that while PPG has continued to argue that authority has been delegated to PADEP to oversee RCRA compliance in Pennsylvania, the evidence presented contradicts this contention. (ECF No. 420 at 25.)[9] As this Court has already stated: "If the Court of Appeals wanted to conclude that courts should give substantial deference to state agency-approved remediations, it could easily have said so, but it did not." (ECF No. 420 at 25-26.) *See also ICO/PPG*, 702 F. Supp. 2d at 311 ("The questions before this Court arise under the language of the RCRA, a statute which the DEP has no discretion to interpret."); *id.* at 312 ("The DEP's general discretion with regard to environmental matters in this state does not circumscribe citizen suits authorized by Congress.")

In *ICO/PPG*, PPG made the same arguments it makes here, but the court rejected them. The *ICO/PPG* court noted that "the Consent Judgment requires that PPG remediate chromium

---

[8] Agency capture refers to "an agency's susceptibility to the influence and control of the industry Congress charged the industry to regulate." *Bonneville Int'l Corp. v. Peters*, 153 F. Supp. 2d 763, 774 n.11 (E.D. Pa. 2001).

[9] PPG now argues that the fact that the EPA implements the RCRA Corrective Action program in Pennsylvania has no bearing on the issue before the Court because PPG ceased disposing of waste at the Site in 1970 and the trigger date for RCRA Corrective Actions is November 19, 1980. (ECF No. 427 at 13-14.) This case is not a RCRA Corrective Action, and the issue is whether PADEP's approval of a remedy effectively bars a citizen suit such as this one. PPG has cited no authority to support its contention that it does.

11

levels to DEP's current standard of 20 ppm, but this Court could potentially, for instance, order remediation to a standard lower than 20 ppm." *Id.* at 301. The court concluded that:

> Here, PPG has not agreed to provide all the remedies which Plaintiffs seek. Furthermore, in contrast with permitting cases, PPG's liability cannot be established simply by establishing "compliance" or "non-compliance" with preexisting state standards and regulations. Rather, the extent of Defendant's liability, if any, must be determined by a court. Therefore, PPG ... may be liable under the RCRA even if it complies with the state standards incorporated in the Consent Judgment. *See Honeywell*, 399 F.3d at 259-60 (holding a court may grant relief "as necessary" to abate endangerment, regardless of state standards).

*Id.* at 302.[10]

In its reply brief, PPG cites *Kara Holding Corp. v. Getty Petroleum Mktg., Inc.*, 2004 WL 1811427, at *12 (S.D.N.Y. Aug. 12, 2004) to support its contention that PADEP's approval of the remedy should be given "substantial weight" because determining that an imminent and substantial endangerment is being sufficiently remedied is intertwined with the agency's determination of acceptable levels of contaminants at a site. In that case, the plaintiff proposed a remediation plan, but its experts acknowledged at a hearing on motions for summary judgment that there were various acceptable ways of handling the remediation and there was no evidence that the plan approved by the state agency was insufficient to address any danger to health or the environment. In this case, by contrast, Plaintiffs' experts have raised serious challenges to the approved—but not yet implemented—remedy as being sufficient to address any danger to health and the environment. *See also Stoll v. Kraft Foods Global, Inc.*, 2010 WL 3702359, at *10 (S.D. Ind. Sept. 6, 2010) (distinguishing *Kara* on the grounds that it involved a nearly completed remediation project, as opposed to a project that had not yet been finally approved and the plaintiffs had not

---

[10] As Plaintiffs note, in *ICO/PPG*, the district court denied PPG's motion for reconsideration. *Id.* at 316.

yet been afforded the opportunity to present a proposed remediation plan).

PPG cites to cases holding that Pennsylvania courts afford deference to the expertise of agencies such as the PADEP. *Mathies Coal Co. v. Commonwealth*, 559 A.2d 506, 512 (Pa. 1989); *Wheeling-Pittsburgh Steel Corp. v. Department of Envt'l Protection*, 979 A.2d 931, 937 (Pa. Commw. 2009). It then argues that "[f]ederal courts reviewing state agency action afford the agencies the deference they would receive under state law." *Township of Bordentown v. FERC*, 903 F.3d 234, 270 (3d Cir. 2018).[11] *See also Don't Ruin Our Park v. Stone*, 802 F. Supp. 1239, 1249 (M.D. Pa. 1992). PPG also cites a case decided under the Administrative Procedures Act for the proposition that "an agency is entitled to select any reasonable methodology and to resolve conflicts in expert opinion and studies in its best reasoned judgment based on the evidence before it." *Buckingham Township v. Wykle*, 157 F. Supp. 2d 457, 467 n.10 (E.D. Pa. 2001).

By contrast, however, the issue here is not whether PADEP's actions comport with Pennsylvania law, but rather, whether PPG's actions have created an imminent and substantial endangerment to health or the environment.

Finally, PPG makes the public policy argument that failing to afford deference to PADEP's determinations will substitute the opinions of Plaintiffs' paid experts for the final determination of the PADEP and supplant the agency's fundamental role, mission and expertise in determining what is necessary to protect human health and the environment in Pennsylvania. PPG further contends that this will place PPG and PADEP in the untenable position of being subject to inconsistent and competing requirements with respect to remediation of the Site and undermine the Act 2 program

---

[11] As Plaintiffs note, the court subsequently stated that "we afford no deference to a state agency's interpretation of federal law, which we instead review de novo." *Id.*

13

and its established cleanup standards.

The Court finds PPG's policy arguments unavailing. PPG made many of the same policy arguments in the *ICO/PPG* case, and the court rejected them, stating that "Congress took no steps to bar a RCRA citizen suit for any other reason than that referred to [in the statute]." 702 F. Supp. 2d at 315. "Although the subject matter of the Consent Judgment and remediation standards chosen by the DEP are, indirectly, at issue here, there is no legitimate basis for abstention [because] the RCRA suit may exist in spite of other actions having been taken to resolve the same matter." *Id.* Although PPG's argument in this case is in support of deference rather than abstention, the result is the same. RCRA includes a citizen-suit provision with certain exceptions, none of which apply here, and the fact that this Court might impose a more stringent remediation standard than that to which PADEP has agreed does not require the Court to abdicate its responsibility to apply the law to the facts of this case.

### Equally Credible Experts

PPG's final argument is that, because the Court noted that the experts presented by Plaintiffs and PPG at the hearing were "equally credible," it must necessarily follow that Plaintiffs could never succeed in obtaining mandatory injunctive relief, which requires "an extraordinarily high burden." Plaintiffs state that it is not unusual for a court to find that the experts of both sides are credible, yet still determine that one party has presented more compelling and persuasive case on the merits. *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 263 F. Supp. 2d 796, 805-13 (D.N.J. 2003) (court found both sets of experts credible but still granted judgment and injunctive relief to the plaintiff), *aff'd*, 399 F.3d 248 (3d Cir. 2005). Plaintiffs also note that they did not present all of their arguments or evidence or even all of their experts at the hearing because they were not required to demonstrate all the flaws in the testimony of PPG's experts.

14

In noting that the parties submitted "equally credible experts," the Court did not make an ultimate determination as to the merits of Plaintiffs' claim or PPG's defense regarding potential injunctive relief. Rather, the Court observed that although PPG presented credible experts who testified that the Comprehensive Site-Wide Remedy was sufficient to prevent further imminent and substantial endangerment to health or the environment, Plaintiffs also presented experts whose testimony—if believed by the trier of fact in a trial on the merits of the case—could support the position that the Comprehensive Remedy was ineffective and inefficient. A full adjudication of the parties' respective positions on this issue will not occur until trial. At the hearing, however, PPG failed to meet its burden to demonstrate that any further injunctive relief Plaintiffs might request is futile.

Therefore, for all of the reasons identified above, PPG's motion for reconsideration will be denied.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNENVIRONMENT and SIERRA CLUB,<br>Plaintiffs,<br><br>vs.<br><br>PPG INDUSTRIES, INC., BOROUGH OF FORD CITY, and BUFFALO & PITTSBURGH RAILROAD, INC.,<br>Defendants. | Civil Action No. 12-342<br>Member Cases: 12-527, 13-1395, 13-1396, 14-229<br>Magistrate Judge Dodge |

## ORDER

AND NOW, this 2nd day of October, 2019, for the reasons set forth in the Memorandum Opinion, IT IS HEREBY ORDERED that Defendant PPG Industries, Inc.'s Motion for Reconsideration of the Court's May 22, 2019 Memorandum Opinion and Order (ECF No. 426) is denied.

BY THE COURT:

PATRICIA L. DODGE
United States Magistrate Judge