**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

PENNENVIRONMENT and SIERRA CLUB,        )
                                        )
                     Plaintiffs,        )
                                        )
        vs.                             )        Civil Action No. 12-342
                                        )        Member Cases: 12-527, 13-1395, 13-
                                        )        1396, 14-229
PPG INDUSTRIES, INC.,                   )
                                        )        Magistrate Judge Dodge
                     Defendant.         )

<u>**MEMORANDUM OPINION**</u>

Plaintiffs PennEnvironment and Sierra Club brought citizen lawsuits against Defendant

PPG Industries, Inc. ("PPG") under section 505 of the Federal Water Pollution Control Act, 33

U.S.C. § 1365(a)(1) (Clean Water Act or "CWA"), section 7002(a)(1)(B) of the Resource

Conservation and Recovery Act, 42 U.S.C. § 6972(a)(1)(B) ("RCRA"), and section 601(c) of the

Pennsylvania Clean Streams Law, 35 P.S. § 691.601(c) ("CSL"). In these lawsuits, they sought to

remedy the alleged imminent and substantial endangerment to health and the environment

presented by contamination of a site in Armstrong County, Pennsylvania used and operated by

PPG (the "Site"), contamination of surface waters and sediments in the Allegheny River and Glade

Run near the Site, and contamination of groundwater associated with the Site.

In March 2021, after multiple motions for summary judgment were resolved and as

discussed in more detail below, the parties entered into a consent settlement which was finalized

in a Consent Order that was approved by the Court. Pursuant to the terms of the Consent Order,

all existing claims were resolved except: (i) PPG's liability, if any, for a civil penalty under the

Clean Water Act, as well as the amount of any such penalty, and (ii) PPG's liability, if any, for

Plaintiffs' litigation costs,  including attorney's fees and expert witness' fees under 33 U.S.C. §

1365(d) and 42 U.S.C. § 6972(e).

A two-week non-jury trial is scheduled to commence on June 3, 2024 on the issue of PPG's civil penalty under the CWA. Also pending is Plaintiffs' motion for litigation costs, including attorney's fees and expert witness' fees.

Presently pending is PPG's Rule 54(b) Motion (ECF No. 555), which seeks revision of a Memorandum Opinion and Order issued by the Court on August 31, 2015 (ECF No. 228).  In that order, the Court granted Plaintiffs' Third Partial Motion for Summary Judgment and, inter alia, found PPG liable under the CWA for discharging pollutants from the Site into the waters of the United States and of the Commonwealth of Pennsylvania since April 16, 1973, without an appropriate permit authorizing such discharges.[1]

For the reasons discussed below, PPG's motion will be denied.

### I.    Relevant Procedural History

On January 13, 2012, Plaintiffs gave notice of their intent to file suit to the Administrator of the Environmental Protection Agency (EPA), the Pennsylvania Department of Environmental Protection (PADEP) and Defendants PPG and the Borough of Ford City (the latter of which has since been dismissed from this case) as required by the CWA, CSL and RCRA. 33 U.S.C. § 1365(b)(1)(A); 35 P.S. § 691.601(e); 42 U.S.C. § 6972(b)(2)(A). (CWA Compl. ¶ 4 & Ex. 1; RCRA Compl. ¶ 4 & Ex. 1.) Plaintiffs then commenced this action under the CWA and the CSL. Additional actions were later commenced under the CWA, CSL and RCRA and eventually were consolidated at this case number.

---

[1] This Opinion and Order was published as *PennEnvironment v. PPG Industries, Inc.*, 127 F. Supp. 3d 336 (W.D. Pa. 2015). Plaintiffs refer to it as "*PPG IV*," because it was the fourth opinion issued by this Court with respect to this case. The Court will use this term for ease of reference.

On December 10, 2014, the Court granted Plaintiffs' motion for a preliminary injunction to the extent that it sought an order requiring PPG to apply for a National Pollutant Discharge Elimination System ("NPDES") Permit. PPG was ordered to apply for a permit by March 31, 2015 (ECF No. 92). PPG subsequently notified the Court that it had submitted its NPDES permit application and the PADEP had accepted it (ECF No. 212).

The Court issued *PPG IV* on August 31, 2015, in which it granted Plaintiffs' Third Partial Motion for Summary Judgment (ECF No. 228). The Court found that PPG was liable under the CWA and CSL given the evidence that PPG was discharging waste without an NPDES permit.[2] Under the CWA, "it is illegal for anyone to discharge pollutants into the Nation's waters except pursuant to a permit." *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 310-11 (1981).

Further, the Court determined that PPG was violating a 2009 Administrative Order issued by the PADEP as to Total Suspended Solids by failing to address contamination and creating an interim system that treated uncontaminated storm water in open trenches rather than pipes. PPG was also held liable under the RCRA because the contamination "may present an imminent and substantial endangerment to health or the environment." (ECF No. 228 at 86.)

On April 2, 2019, PPG filed a notice of a Consent Order and Agreement reached with the PADEP (ECF No. 409, 409-1) (the "2019 COA.") Therein, PPG agreed "that the Findings contained in Paragraphs A through NNN are true and correct, and, in any matter or proceeding involving PPG and the Department, PPG shall not challenge the accuracy or validity of these findings." (2019 COA § XIX ¶ 30.)  Further, "[n]o changes, modifications, or amendments of this

---

[2] In a Memorandum Opinion (ECF No. 501) and Order (ECF No. 502) issued on February 23, 2022, the Court granted Plaintiffs' Fifth Partial Motion for Summary Judgment and extended PPG's liability under the CWA from August 31, 2015 through December 31, 2019.

Consent Order and Agreement shall be effective unless they are set out in writing and signed by the Parties hereto." (*Id.* § XXV, ¶ 39.) The Findings included, inter alia, allegations made by Plaintiffs in this case, namely that: "the discharge from Outfall 001 of the Interim Abatement System and the leachate and/or seeps that discharge at various locations at the Site violate Sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342(p), by discharging pollutants into waters of the United States without an NPDES permit issued pursuant to the Clean Water Act authorizing such discharges." (*Id.* ¶ JJJ(i).) The 2019 COA makes no mention of *PPG IV* or any other order of this Court regarding PPG's liability under the CWA, RCRA or the CSL.

This matter was referred to (then) Magistrate Judge Lenihan in October 2019 for the purpose of conducting a judicial settlement conference. Multiple settlement discussions took place, the ultimate  result of which was the settlement of the majority of the claims asserted by Plaintiffs. Thereafter, on January 26, 2021, the parties submitted a Notice of Lodging of Consent Order Settling Injunctive Relief Claims and Reserving Other Claims for Future Adjudication (ECF No. 465). Following a 90-day period to allow for objections by the Attorney General or the EPA, and no objections having been filed, the parties filed a Joint Motion for Entry of Consent Order Settling Injunctive Relief Claims and Reserving Other Claims for Future Adjudication (ECF No. 467).

On March 29, 2021, the Court issued a Consent Order Settling Injunctive Relief Claims and Reserving Other Claims for Future Adjudication ("Consent Order") (ECF No. 468), which included as Appendix 1 the 2019 COA in the form submitted by the parties. The Consent Order expressly provides that it "contains the entire agreement between the Parties relating to the subject matters addressed herein and supersedes all prior written and oral agreements and understandings between the Parties." (*Id.* ¶ 37.)

As noted above, under the terms of the Consent Order, all claims were resolved except for:

"(i) PPG's liability for and the amount of the civil penalty, if any, to be imposed under the Clean Water Act, and (ii) PPG's liability for and the amount of litigation costs, if any, including attorneys' fees and expert witness' fees under 33 U.S.C. 1365(d) and 42 U.S.C. 6972(e)." (ECF No. 468 ¶ 11.) The Court retained jurisdiction to resolve these issues. (*Id.* ¶¶ 28-29.)[3]

PPG subsequently filed a motion for summary judgment on June 1, 2021 (ECF No. 480) in which it argued that the issue of a civil penalty under the CWA was moot because it had already paid the PADEP the sum of $1.2 million in connection with the 2019 COA. In a Memorandum Opinion and Order (ECF Nos. 501, 503) issued on February 23, 2022, the Court denied PPG's motion.[4] The Court noted that the Third Circuit has never held that a penalty paid to a state agency under a consent decree moots that party's responsibility to pay a civil penalty to the United States under the CWA.

The Court also found that PPG did not demonstrate that the amount paid to the PADEP was "comparable" to a civil penalty under the CWA, which is assessed after public notice and comment as well as consideration of the issues of economic benefit to PPG by any past noncompliance and meaningful deterrence. The amount paid by PPG in connection with the 2019 COA appeared to bear no relationship to the amounts that could be assessed in a CWA civil penalty for PPG's violations. Further, because there was no relationship to the estimated costs of establishing and maintaining the system, the amount paid by PPG did not suggest that it met the standard for deterrence. Finally, PPG's payment did not account for periods of violations that occurred before April 2, 2014 or after the entry of the 2019 COA on April 2, 2019, during which

---

[3] An effort in 2022 by Judge Lenihan to resolve these two issues was unsuccessful (ECF No. 520).
[4] The opinion on the mootness issue was published as *PennEnvironment v. PPG Indus., Inc.*, 587 F. Supp. 3d 286 (W.D. Pa. 2022).

PPG's unpermitted discharges continued until the NPDES permit became effective on January 1, 2020.

At issue here is PPG's motion under Rule 54(b) (ECF No. 555) which been fully briefed (ECF Nos. 556, 563, 564). In its motion, PPG argues that while the Court concluded in *PPG IV* that PPG was liable under the CWA, it did not explicitly make findings as to which discharges were from "point sources" to "waters of the United States" ("WOTUS") and thus, its findings were insufficient. In the alternative, PPG argues that, to the extent that the Court implicitly made such findings, they are no longer valid in light of two recent Supreme Court cases, *Sackett v. Environmental Protection Agency*, 143 S. Ct. 1322 (2023), and *County of Maui, Hawaii v. Hawaii Wildlife Fund*, 140 S. Ct. 1462 (2020).

Plaintiffs dispute PPG's motion, asserting that PPG erroneously seeks to relitigate its underlying CWA liability despite the fact that this issue was resolved by the parties when they agreed to the terms of the  Consent Order.[5]  Further, they argue that even if the Court were to revisit the issue, *PPG IV* appropriately concluded that Outfall 001 and the culverts underneath the railroad are point sources and that the Allegheny River, Glade Run and wetlands bordering the River all constitute WOTUS. Thus, Plaintiffs contend, even under the rulings in *Sackett* and *Maui*, these conclusions would still be valid.

In reply, PPG further argues that the Consent Order—which is not a final order—expressly left open the issue of its liability for a CWA civil penalty. Moreover, it disputes that culverts can

---

[5] While not dispositive to the issues presently before the Court, PPG acknowledged in the 2019 COA that the acts alleged in Plaintiffs' Complaint, including the "discharge from Outfall 001 and the leachate and/or seeps that discharge at various locations . . . " "also subject PPG to civil penalty liability under . . . the federal Clean Water Act."  (ECF No. 409 ¶¶ JJJ(i), KKK.)

be point sources and argues that while Outfall 001 is a point source in the sense that it is a discrete conveyance, it does not discharge directly to WOTUS. It also argues that, to the extent that Plaintiffs contend that PPG is liable for having the "functional equivalent" of a discharge, they have failed to discuss the appropriate factors under *Maui*.

## II.   Discussion

PPG bases its challenge to *PPG IV* on Rule 54(b). Plaintiffs dispute that Rule 54(b) applies to this controversy and because PPG is actually challenging the terms of the Consent Order, either Rule 60(b)(5) or 60(b)(6) applies.

Rule 54(b) states that, with certain exceptions, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). By contrast, Rule 60(b) applies to a "final judgment, order or proceeding," on the basis that, inter alia: "(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief."

PPG argues that Rule 60(b) does not apply because the decision in *PPG IV* did not resolve all issues in the case and the Consent Order is not a final order because it leaves open two issues, including its liability for the civil penalty under the CWA. Plaintiffs counter that the Consent Order was final as to the issue of PPG's liability under the CWA.

PPG is correct that neither the decision in *PPG IV* nor the Consent Order are final orders that end this lawsuit. Where PPG goes astray, however, is failing to acknowledge that as to its liability under the CWA, that issue is final. As relevant here, other than PPG's liability for and the

amount of a civil penalty, if any, the Consent Order expressly "resolves, settles and satisfies all claims by Plaintiffs against PPG under Plaintiffs' consolidated complaints and amended complaints . . . including those claims regarding the waste and contamination . . . in the vicinity of the PPG Waste Site." Thus, by entering into the Consent Order, PPG agreed, among other things, that the issues raised and decided in *PPG IV* as to PPG's liability under the CWA have been resolved.

Consent orders are treated as contracts. See, e.g., *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975); *McDowell v. Philadelphia Hous. Auth. (PHA)*, 423 F.3d 233, 238 (3d Cir. 2005). Contract law requires the Court to interpret`` contracts "to give meaning to all [their] terms." *In re Energy Future Holdings Corp.*, 842 F.3d 247, 256 (3d Cir. 2016) (citation omitted)). Thus, "an interpretation [of an agreement] which gives reasonable . . . and effective meaning to all [of its] terms is preferred to an interpretation which leaves a part unreasonable . . . or of no effect." *Heffron v. Adamar of New Jersey, Inc.*, 270 F. Supp. 2d 562, 572 (D.N.J. 2003) (quoting Restatement (Second) of Contracts, § 203(a))). And neither party argues that the terms of the Consent Order are unclear or ambiguous.

When entering into the Consent Order, PPG expressly reserved the right to litigate its liability for a civil penalty under the CWA. At the same time, however, the arguments it now raises are at odds with its agreement to "resolve, settle and satisfy" all claims asserted by Plaintiffs. Simply put, PPG's argument that it owes no penalty because it is not liable, or may not be liable, under the CWA would improperly reopen an issue that was subject to a negotiated agreement between the parties. Under these circumstances, the decision in *PPG IV* cannot be reconsidered on the ground that it is possible that the Court might come to a different conclusion today than it did when it addressed the question in 2015.

Thus, PPG's motion under Rule 54(b) fails as it seeks to modify or revisit issues that were already resolved, including any challenges to its CWA liability.

Plaintiffs suggest that the only potential rules to apply to the issue of PPG's liability under the CWA as expressed in the Consent Order would be Rule 60(b)(5) or 60(b)(6).

"Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests, but the Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992)). Here, PPG is challenging the holding in *PPG IV* based on a change in the law. As previously discussed, however, issues of its potential liability under the CWA were subject to a settlement to which the parties agreed. Therefore, Rule 60(b)(5) does not apply to this case.

The Supreme Court has "required a movant seeking relief under Rule 60(b)(6) to show 'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). PPG has not pointed to any extraordinary circumstances justifying relief. Because parties can agree to settle an issue on any terms, subsequent changes in the landscape of case law are no longer relevant, and therefore, the recent Supreme Court decisions regarding potential CWA liability have no bearing on this matter.[6] Therefore, PPG has not justified a request for relief under Rule 60(b)(6).

In short, although the parties could have come to an agreement that PPG would owe no

---

[6] Nevertheless, as Plaintiffs note, the parties agreed to lodge the Consent Order on January 26, 2021, nine months after the *Maui* case was decided.

further civil penalty, they did not do so. Rather, they returned the issue to the Court for resolution, and the Court must follow the framework of the CWA. In relevant part, the CWA provides that any person who violates various provisions of the Act:

> shall be subject to a civil penalty not to exceed $25,000 per day for each violation. In determining the amount of a civil penalty the court shall consider the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require.

33 U.S.C. § 1319(d).[7] As held by the Third Circuit, the statute's "mandatory language demonstrates that once a citizen plaintiff establishes an ongoing violation of a parameter at the time the complaint is filed, the court is obliged to assess penalties for all proven violations of that parameter." *Natural Res. Def. Council, Inc. v. Texaco Ref. & Mktg., Inc.*, 2 F.3d 493, 503 (3d Cir. 1993) (citing 33 U.S.C. § 1319(d)). *See also Atlantic States Legal Found., Inc. v. Stroh Die Casting Co.,* 116 F.3d 814, 820 (7th Cir. 1997); *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1397 (9th Cir. 1995); *Atlantic States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1142 (11th Cir. 1990).

In this case, PPG's ongoing violation of a parameter under the CWA was established when the parties submitted and the Court approved the Consent Order in 2021. That determination is not subject to being revisited on the ground that, if the Court were to analyze the issue today under recent Supreme Court cases, it might come to a different conclusion than it did when it addressed the question in 2015.

In fact, PPG has previously contested its liability for the civil penalty.  In June 2021, PPG

---

[7] This amount has been updated by regulation.

10

filed a Motion for Summary Judgment on Mootness Grounds (ECF No. 480) in which it challenged its liability for a civil penalty under the CWA. In support of its motion for summary judgment, PPG argued, among other things, that the 2019 COA imposed a civil penalty on PPG in the amount of $1.2 million to specifically redress the alleged violations of the CSL and CWA. Because it had already paid a civil penalty under the CWA and the 2019 COA imposes mandatory stipulated penalties for future noncompliance with its terms, PPG asserted there was no other matter for this Court to resolve without upsetting the PADEP's primary enforcement role. Plaintiffs disputed that this payment constituted a "civil penalty" under the CWA because it failed to capture PPG's economic benefit or offer meaningful deterrence.

In denying PPG's motion, the Court noted, as it does here, that the Third Circuit has never held that a penalty paid to a state agency under a consent decree moots that party's responsibility to pay a mandatory civil penalty to the United States under the CWA. See, e.g., ECF No. 501 at 16, 29; see also ECF No. 513 at 6.

Thus, PPG has failed to demonstrate that is entitled to the relief it seeks.

## III.   Conclusion

For these reasons, PPG's motion under Rule 54(b) will be denied.

An appropriate order will follow.


Date: March 7, 2024                         /s/ Patricia L Dodge
                                            PATRICIA L. DODGE
                                            United States Magistrate Judge